# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **HAROLD "TREY" RING** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DENTON COUNTY EMERGENCY** | § | |
| **SERVICES DISTRICT #1, also d/b/a** | § | **CIVIL ACTION NO. _____** |
| **ARGYLE FIRE DISTRICT, AS THE** | § | |
| **SUCCESSOR OF THE ARGYLE** | § | |
| **VOLUNTEER FIRE DEPARTMENT,** | § | |
| **also d/b/a ARGYLE FIRE DISTRICT,** | § | |
| **and TROY MAC HOHENBERGER,** | § | |
| **Defendants** | § | |

## PLAINTIFF HAROLD "TREY" RING'S ORIGINAL INDIVIDUAL
## AND CLASS ACTION COMPLAINT AND JURY DEMAND

RESPECTFULLY SUBMITTED,

*/s/ Eric N. Roberson*

_____

Eric Roberson
Texas State Bar No. 00792803
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, TX 75204
214-379-0817 Direct
214.969.9099
214.379.0843 Fax
ENR@KilgoreLaw.com
**Attorney for Plaintiff Harold "Trey" Ring**

## TABLE OF CONTENTS

I.      JURISDICTION AND VENUE JURISDICTION AND VENUE ................................. 1

II.     THE PARTIES ................................................................................................................2

III.    THE FACTUAL BACKGROUND OF THE ACTION .................................................3

        A.      History of the Defendants – The District Started Funding the
                Argyle Volunteer Fire Department in 2007 and Merged with it
                in October of 2020 ...........................................................................................3

        B.      Plaintiff's History with the Argyle Volunteer Fire Department ......................4

                1)      Ring Starts at AVFD in 2017 and Receives Multiple Promotions ........4

                2)      Ring's Career Turns South After Asking ERISA
                        Protected 401K Questions .................................................................... 5

                3)      Ring Passes Drug Test After False Accusation
                        He was a Drug Addict ............................................................................ 8

                4)      Ring Wrongfully Terminated on Pretext of Illegal Activity ................. 9

                5)      The Argyle Fire District's 401K Has Been Mismanaged and
                        Employees are Being Silenced .............................................................. 12

IV.     CLASS ACTION ALLEGATIONS ............................................................................ 12

V.      CLAIMS FOR RELIEF .............................................................................................. 16

        A.      FIRST CLAIM FOR RELIEF: (WRONGFUL TERMINATION
                OF RING IN VIOLATION OF ERISA) ......................................................... 16

        B.      SECOND CLAIM FOR RELIEF: (WRONGFUL TERMINATION OF
                RING IN VIOLATION OF THE AMERICANS WITH DISABILITIES
                ACT) .............................................................................................................. 17

        C.      THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF
                (CLASS ACTION REQUESTS FOR BREACH OF FIDUCIARY
                DUTY, AN ACCOUNTING, AND FOR AN INJUNCTION
                UNDER ERISA ............................................................................................. 17

VI.     JURY DEMAND ........................................................................................................ 18

VII.    PRAYER FOR RELIEF ............................................................................................. 18

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **HAROLD "TREY" RING** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DENTON COUNTY EMERGENCY** | § | |
| **SERVICES DISTRICT #1, also d/b/a** | § | **CIVIL ACTION NO.** 4:21-cv-917 |
| **ARGYLE FIRE DISTRICT, AS THE** | § | |
| **SUCCESSOR OF THE ARGYLE** | § | |
| **VOLUNTEER FIRE DEPARTMENT,** | § | |
| **also d/b/a ARGYLE FIRE DISTRICT,** | § | |
| **and TROY MAC HOHENBERGER,** | § | |
| **Defendants** | § | |

**PLAINTIFF HAROLD "TREY" RING'S ORIGINAL INDIVIDUAL**
**AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff Harold "Trey" Ring, by his attorney, files this his Original Individual and Class Action Complaint and Jury Demand against Defendants Denton County Emergency Services District #1 (District or ESD#1), also d/b/a Argyle Fire District, as the successor in interest through a merger with the Argyle Volunteer Fire Department (AVFD), also d/b/a Argyle Fire District, and Troy Mac Hohenberger, alleging as follows:

**I.     JURISDICTION AND VENUE**

1.     This action arises under the Employee Retirement Income Security Act, 29 U.S.C. §§1001, *et seq.* (ERISA), including the ERISA anti-retaliation provision in Section 1140, and the Americans with Disabilities Act, 42 U.S.C. § 12102(1)(C) (ADA). The ADA requires administrative exhaustion, and Ring satisfied the ADA's prerequisites, obtained a right to sue letter from the EEOC on September 15, 2021, and timely files this complaint within 90 days of the receipt thereof. Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221 and 28 U.S.C. §§ 1338(a) (b).

2.      This Court has personal jurisdiction over both Defendants as they reside, work, and/or are located within the Eastern District of Texas.

3.      Venue is appropriate in the Eastern District of Texas pursuant to 28 U.S.C. Section 1931(b)(2), and this matter is properly in the Sherman Division, because the acts or omissions that form the basis of this action occurred within Denton County, which is within the Sherman Division of the Eastern District of Texas.

## II.      THE PARTIES

4.      Plaintiff **Harold "Trey" Ring** ("Ring") is a citizen of the United States and of Texas, residing in Denton County, Texas.

5.      Defendant **Denton County Emergency Services District #1, d/b/a Argyle Fire District,** is the successor in interest to the **Argyle Volunteer Fire Department**, **also d/b/a Argyle Fire District,** apparently having merged with that entity on or about October of 2020. The District is sued as successor in interest for the actions of AVFD prior to this merger. It is incorporated in the State of Texas, headquartered in Argyle, Texas, and all, or almost all, of its operations occur in the State of Texas. It may be served by provided service to its chief officer, **Troy Mac Hohenberger,** at his place of work:

Denton County Emergency Services District No. 1, Station 511
511 S. Gibbons Road
Argyle, Texas 76226

6.      Defendant **Troy Mac Hohenberger** (Hohenberger) is sued for his conduct in his individual capacity while acting as Chief of the AVFD and the Administrator of the AVFD's ERISA qualified 401K plan. He is a resident and citizen of Texas. He may be served at his work:

Denton County Emergency Services District No. 1, Station 511
511 S. Gibbons Road
Argyle, Texas 76226

### III.   THE FACTUAL BACKGROUND OF THE ACTION

**A.   History of the Defendants – The District Started Funding the Argyle Volunteer Fire Department in 2007 and Merged with it in October of 2020**

7.      As reported in the District's 2020 audited financial statement, "[i]n October 2007, the District entered into agreements with the Argyle Volunteer Fire District, the City of Roanoke and the Justin Volunteer Fire Department for fire and emergency medical services protection. The term of each agreement was one year, with a provision for automatic renewal for additional one-year terms. Under the terms of each agreement, the emergency services provider agreed to provide fire services and EMS services to the District. In return, the District agreed to provide funding for such services on a quarterly basis from the tax revenues generated by the District." However, according to the same report, "during the [2020] fiscal year the District and the Argyle Volunteer Fire District (AVFD; a Texas nonprofit corporation) entered into an agreement for the merger of the two entities effective October 1, 2020. Ownership of all AVFD assets and all related debt will transfer to the District, as well as all management, administrative and emergency services responsibilities of AVFD. Operations of AVFD will continue to be accounted for separately under the direction of the District."[1]

8.      The District, in whole or in part, has apparently also decided to use the same assumed name formerly used by the AVFD, which is the "Argyle Fire District." Despite the District's public statement that the AVFD merged into the District in October of 2020, the AVFD was still listed as the employment entity with the State of Texas' State Department of State Health Services as of October 13, 2021. The AVFD also remains listed on the Texas Secretary of State's

---

[1]      Available at file:///C:/Users/enr/Downloads/Financial-Audit-2020-Final%20(1).pdf, p. 27, notes 10 and 11,  accessed on October 30, 2021.

database as the employer of members of the District. Thus, there is at least some reason to believe that the AVFD may still exist as a separate entity.

9.      According to the District's website, Troy Mac Hohenberger "started his career at the Argyle Fire District in 1991. During this time Chief Hohenberger worked his way up in the chain of command serving in each officer role. In 2000 Chief Hohenberger was promoted to Fire Chief by the AFD Board of Directors." Hohenberger is the District's Chief after the merger.[2]

**B.      Plaintiff's History with the Argyle Volunteer Fire Department**

**1)      Ring Starts at AVFD in 2017 and Receives Multiple Promotions**

10.      Prior to AVFD's termination of his employment, Ring had been employed at AVFD since 2017. As April of 2019 approached, Ring's career was blossoming. He had risen from a part-time employee to a full-time employee, and he had been promoted to the rank of Driver/Engineer.

11.      Further, as Ring had risen through the ranks, he had been recognized for his interest in the future of the AVFD and in training new employees as they joined the Department.

12.      Indeed, Ring had been frustrated and confused about the lack of information provided to him when he joined AVFD as a new employee. Subsequently, he had grown concerned about the lack of information provided to all new employees at AVFD. There was simply not an organized onboarding system for new employees and not a training program being developed for them. Further, there was not an organized employee handbook or other source of guidance to provide to new employees. Instead, AVFD focused on an on-the-job training system, that really was no system at all.

---

[2]      See the District's website, available at https://dentoncountyesd1.gov/fire-administration/; accessed on October 30, 2021.

13.     This lack of information was a function of the bare-bones nature of the AVFD management system for employees, or more realistically, the lack of one. Originally a small community affair, the AVFD has grown in the last twenty years to a multi-million-dollar organization, funded by the taxpayers of Denton County. However, as it has grown the amount of assets it manages has exploded, and, at least prior to the merger, its management system had not changed. That putative management system consisted almost completely within the brain of Hohenberger.

**2)     Ring's Career Turns South After Asking ERISA Protected 401K Questions**

14.     Indeed, Hohenberger maintained a tight grip over AVFD's finances. For example, AVFD lacked a professional bookkeeper to manage daily and weekly payments of bills and salary. Instead, all the finances were maintained by Hohenberger. This reality led to multiple problems. For example, on more than one occasion when Hohenberger was out of town on a payday, AVFD's employees were not paid until several days after Hohenberger returned to town. On occasion, Hohenberger would log in remotely from an airport to process payroll.

15.     At least prior to the merger, Hohenberger was also the sole administrator of the AVFD ERISA-qualified 401K plan. Upon information and belief, that fact remains unchanged after the merger.

16.     The AVFD 401K Plan was formed on October 5, 2007, and it has filed annual Form 5500 reports since that time. According to the 2020 Form 5500, the Argyle Fire District 401K Plan is a single employer plan with $3,478,428 in assets. It started the reporting year with 34 beneficiaries and ended with 33. Hohenberger has been listed as the Plan Administrator on every Form 5500 since at least 2010.

17.     As the 401K's administrator and as AVFD's sole financial manager, Hohenberger removed funds from each employees' paycheck for the purposes of putting the funds in the individual employee's 401K account. However, Hohenberger failed to maintain a habit and practice of properly and timely moving these funds to the employees' individual accounts or timely providing AVFD's matching funds. AVFD has a 2-1 match on employee contributions, and according to ERISA requirements and good management practices, these funds should be deposited promptly and accurately into each employees' account.

18.     However, a review of Ring's 401K statement from Fidelity shows that over the course of his employment at AVFD, Hohenberger made the contributions on a catch-as-catch-can basis. Sometimes payments were made close to each paycheck as required. Sometimes payments were delayed for up to a month, and then an apparent catch-up payment was made. Sometimes payments were made in the wrong amounts. Sometimes the payments were too small and sometimes they were too large.

19.     Upon information and belief, due in whole or in part to Hohenberger's failure to follow appropriate accounting and bookkeeping measures large amounts of AVFD and/or District money, including taxpayer funding provided to AVFD for firefighting purposes, is missing and unaccounted for.

20.     Also, despite the legal requirement for 401K administrators to provide certain information to 401K plan beneficiaries, including a copy of the Summary Plan Description within 90 days of becoming eligible for the plan and at least once a year, Hohenberger never provided Ring (or any other AVFD eligible employees) a copy of the SPD while Ring was employed at AVFD. Upon information and belief, no AVFD employee has ever received the 401K SPD as required by ERISA.

**PLAINTIFF'S ORIGINAL INDIVIDUAL AND CLASS ACTION COMPLAINT - 6 of 20**

21.     AVFD was a not-for-profit entity until its merger with the District, so at least for the period of time before the merger, there are no governmental immunity restrictions to bringing an ERISA action.

22.     It was with the background of this lack of consistent management and failure to follow minimum ERISA requirements that Ring started asking questions about employment policies in general and specifically about the 401K plan.

23.     On or about April of 2019, Ring approached Hohenberger with questions about the AVFD 401K retirement plan. Specifically, Ring was concerned that the 401K retirement funds were not being segregated from other funds and paid to employees properly. Accordingly, he asked Chief Hohenberger numerous questions about how the 401K plans worked, how do employees choose what funds to invest in, how were funds removed from employee checks and paid to employees, how did Hohenberger keep track to make sure the right funds were paid into each employees' account. Included in this discussion were numerous questions protected by ERISA law seeking answers about how the 401K works, whether he could get more information for himself and to give to new employees, and what Hohenberger did with the funds withdrawn from employee checks to ensure that the right funds were getting into employee retirement funds within the right timeframe.

24.     In response to these questions, Hohenberger quickly became enraged, and he let Ring have it. He loudly told Ring to "mind your own f-_-_-_-ing business," and he immediately kicked Ring out of Hohenberger's office. This incident occurred while several employees were nearby, and Ring immediately told his crew what was said by Hohenberger.

25.     After this meeting, Ring's career was doomed. Hohenberger's attitude towards Ring changed remarkably and immediately. Whereas Hohenberger had previously approved of

and fostered Ring's attempts to assist new employees, Hohenberger now changed to a visibly antagonistic attitude to Ring. Indeed, Ring was a victim of multiple injustices that ultimately led to him losing the job that he loved through no fault of his own – an injustice that would have been prevented at numerous steps if Hohenberger had merely acted in accordance with the law.

### 3)  Ring Passes Drug Test After False Accusation He was a Drug Addict

26.      On or about January 5, 2020, Ring was told that AVFD had received an alleged complaint that he was at work under the influence of drugs. If this complaint even existed, Ring was not provided a copy of it. Even more, the allegation that Ring was under-the-influence of illegal drugs was false. However, Hohenberger used this alleged complaint as a basis to try and fire Ring, and to do so he demanded that Ring take a drug test.

27.      Before taking the drug test, Ring was forced to explain to Assistant Chief Michael Lugo and to Hohenberger that Ring suffers from ADHD and is prescribed Adderall. Prior to taking the drug test, Ring had written down for them all his prescriptions.

28.      Amazingly, despite this list, the Chief required proof from Ring's pharmacist or physician prior to Ring even taking the drug test. This demand forced Mr. Ring to call his pharmacy while both Hohenberger and Assistant Chief Lugo listened. After illegally obtaining Mr. Ring's private prescription records, Hohenberger disagreed with Mr. Ring's statement that he was allowed by his physician to take a prescription on an as needed basis. Hohenberger shook his head and said, "That doesn't make any sense." Ring tried to explain again, but then Hohenberger turned to Assistant Chief Lugo and asked if that made any sense to him. The Assistant Chief responded that "no; it doesn't." Then, Chief Hohenberger stated, "If I were a cop, I would lock your ass up. This don't make any sense."

29.     Mr. Ring then asked Chief Hohenberger three times "why is this happening?" The first time was on the way to take the drug test. The second time was on the way back to the firehouse. And the third time was as he was dropped off at the firehouse. Each time, the Chief responded that Ring was being fired "because I don't have drug addicts on my department."

30.     Amazingly, despite allegedly being concerned that Ring was a drug addict, the Chief allowed Ring to immediately return to duty and drive the fire engine during his shift. Indeed, Ring's employment records will indicate he did drive the fire engine during the continuation of his shift and up to his termination in April 2020.

31.     Ring's drug test was accurately returned with a negative result. When the drug test was returned to the Fire Department, Hohenberger refused to initially accept the results. Instead, he told Ring he was going to be required to take a second drug test that would show the levels in his blood and not just "positive" or "negative." But this second test never happened.

**4)      Ring Wrongfully Terminated on Pretext of Illegal Activity**

32.     Even after receiving the test results that Mr. Ring was not taking any drugs, Hohenberger remained convinced that Ring was a drug addict (and/or erroneously believed that Adderall negatively impacted Mr. Ring's performance). The Chief began looking for another excuse to fire Mr. Ring, and within two months, the Chief found a pretext for Ring's termination, discussed more below.

33.     On or about March 4, in the evening at approximately 9:00 pm, Mr. Ring was wrongfully accused of a misdemeanor C for shoplifting (under $100) by Wal-Mart. Before leaving Wal-Mart, Mr. Ring was questioned by a police officer and released. When Mr. Ring left the store sometime between 10:00 and 11:30 pm, no charges had been filed against him, and the police officer at the scene told Ring that he might be contacted later – **if** any charges were to be filed.

34.     That next morning, Mr. Ring reported to work at 6:00 a.m. and immediately went to tell his supervisor, Captain Parker, that he had been accused of theft. However, because the reserve truck was present in the station, the captain gave Ring a thumbs up to the request, but he pointed to the reserve truck indicating that he had to immediately check out the reserve truck and put it into service. Just as Ring finished inspecting the reserve truck, there was an alarm, and both Mr. Ring and Captain Parker and AVFD firefighter Joshua Tripp participated in responding.

35.     As Mr. Ring and Captain Parker returned from the call, both were in the same truck. Mr. Ring again asked Captain Parker if they could speak privately. Captain Parker gave a thumbs up. However, as they were walking to Captain Parker's office, the phone rang before Mr. Ring could tell Captain Parker of the Wal-Mart incident. On the phone was Chief Hohenberger, who was placed on speakerphone. The Chief immediately said that he had just been called by the Roanoke Police Chief and informed about what had happened the prior night at the Wal-Mart. He erroneously claimed that Ring was about to be arrested for several class "A" felonies. The Chief then said that Ring could not be at the fire station when that happened, and that Ring would be sent home under internal investigation, pending the result of the charges.

36.     Ring replied and tried to explain the situation and that this report was inaccurate. However, Chief Hohenberger said that he was not interested and that this should already have been reported. Ring responded that he was trying to report it to Captain Parker the very moment that Hohenberger called. Without ever hearing the truth about the Wal-Mart incident, Chief Hohenberger responded, "You better hire a good lawyer because now you are fighting for your job."

37.     Despite being told that the Chief was going to wait to see the outcome of the charges against Ring, unbeknownst to Mr. Ring, Chief Hohenberger later went to Roanoke with Union

President Chris Muscle where they watched the alleged video tape of the Wal-Mart incident together. Having still never heard Mr. Ring's explanation of the Wal-Mart event, the Chief decided to discharge Mr. Ring, by offering him the Hobson's choice of resignation or termination. The Chief never allowed Mr. Ring the ability to watch the Wal-Mart tape and never allowed Mr. Ring to explain why his actions were completely lawful.

38.     At his post-termination hearing, if it could be called that, Mr. Ring was not provided the ability to face any accuser, was not provided the Wal-Mart tape, was not allowed to explain the Wal-Mart incident, and was not presented with the alleged complaint or complaints against him. Indeed, he was never even given the ability to see the alleged rule that calls for the immediate reporting of any violation, which was not previously provided to Ring or other firefighters. Ring informed the Fire Chief Board and Captain Muscle that neither Ring nor other full- time employees had ever received a copy of any employee manual. Ring was told by Muscle that Hohenberger's response was, " It doesn't matter."

39.     Shortly after the purported hearing, this rule – the alleged basis for Ring's termination – was distributed to the Fire Department employees. To be clear, before Mr. Ring was terminated, he was never allowed or even asked to explain that the charges were false or that he had been trying to immediately report the alleged offense.

40.     Subsequent to losing his appeal and being terminated, all fire department employees were instructed to avoid contact with Mr. Ring. This instruction, which violates Mr. Ring's right to freedom of association, tortiously interfered with Mr. Ring's independent business.

41.     Specifically, Mr. Ring owned and operated a business known as Dallas Home Theaters. In this business, his main source of employees was other members of the department.

Therefore, the order to disassociate from Mr. Ring was an order that crippled Mr. Ring's outside business and has cost him the loss of tens of thousands of dollars in addition to his lost salary.

**5)   The Argyle Fire District's 401K Has Been Mismanaged and Employees are Being Silenced**

42.    Upon information and belief, the problems that Ring has identified with his 401K are not limited to his account. The errors related to the repeated failures of Hohenberger to maintain proper accounting practices, and failure to timely and legally place funds into employees' accounts appears to be a wide-spread problem.

43.    Further, a review of the AVFD 401K's since 2010 shows a number of entries that upon information and belief raise reasonable concerns. For example, these forms show that there have been multiple times when beneficiaries have been marked as deceased, but no such death of a firefighter has occurred, nor has there been any recognition of a prior member of the AVFD passing away.

44.    Numerous past and current employees are beneficiaries of the AVFD 401K Plan and have reasonable questions, which are not getting answered. Further, given the chill created by Ring's termination, they are reasonably in fear that if they ask questions that they too will be wrongfully terminated. Accordingly, Ring is an appropriate class member.

45.    Based on the appearance of a pattern and practice of mismanaging 401K payments and based upon reasonable concerns being raised by the 401K's Form 5500s, an accounting on behalf of the class of all beneficiaries is appropriate.

## IV.    CLASS ACTION ALLEGATIONS

46.    Pursuant to Rules 23(a) and (b) of the Federal Rules of Civil Procedure, Plaintiff Ring brings this action on behalf of himself and the Plaintiff Class, defined as the following similarly situated persons:

All persons who are current or former beneficiaries of the Argyle Fire District 401K Plan, a single employer, ERISA protected, defined contribution retirement plan.

47.     The Plaintiff Class seeks certification of claims for declaratory relief and injunctive relief for Breach of Fiduciary Duty, and for an Accounting.

48.     Excluded from the Plaintiff Class are the officers, directors, and Board members of the Argyle Fire District and their respective legal representatives, heirs, successors, and assigns.

49.     This action is brought as a class action and may properly be so maintained pursuant to the provisions of Federal Rule of Civil Procedure 23. Plaintiff reserves the right to modify the Plaintiff Class definition and the Plaintiff Class period pursuant to discovery that is conducted hereafter.

50.     The prosecution of separate actions by or against individual members of the Plaintiff Class would create a risk of (1) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendant or (2) adjudications with respect to individual members of the Plaintiff Class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

51.     Defendant has failed or refused to act on grounds generally applicable to the Plaintiff Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Plaintiff Class.

52.     The questions of law or fact common to the members of the Plaintiff Class predominate over any questions affecting only the individual members. Plaintiff Ring will be able to demonstrate a viable method for proving common impact in damages to the members of the Plaintiff Class.

53.    A class action is superior to other methods for the fair and efficient resolution of this controversy.

54.    All members of the Plaintiff Class are injured in the business or property by reason of Defendant's unlawful conduct herein alleged. As current or past beneficiaries of the Argyle Fire District 401K plan, all members of the Plaintiff Class have been injured by Defendant's breach of the fiduciary duty through failure to act reasonably as a fiduciary under to the 401K Plan and/or are due an accounting.

55.    **Numerosity of the Plaintiff Class:** Members of the Plaintiff Class are so numerous that their individual joinder is impractical. The precise identities, numbers and addresses of members of the Plaintiff Class are unknown to the Plaintiff but may and should be known with proper and full discovery of Defendant, third parties, and their respective records. As of the 401K Plans 2020 Form 5500, there were 34 members of the Plan at the beginning of the reporting year, but only 33 at the end of the year. Accordingly, the total number of class members is at least 34 and anticipated to be around 45-50.

56.    **Existence of Common Questions of Fact and Law**. There is a well-defined commonality and community of interest in the questions of fact and law involved affecting the members of the Plaintiff Class. The common questions of fact and law include:

a) Whether Hohenberger as the administrator of the AVFD 401K Plan violated his fiduciary duty to the class members by failing to follow proper administrative and accounting procedures, including by failing to timely deposit 401K funds into individual members 401K plans.

b) Whether Hohenberger as the administrator of the AVFD 401K Plan was unjustly enriched at the expense of the class members by failing to follow

proper administrative and accounting procedures, including by failing to timely

deposit 401K funds into individual members 401K plans.

57.   **Typicality:** Plaintiff Ring's claims are typical of the claims of the members of the

Plaintiff Class because Plaintiff Ring and the Plaintiff Class are all current or past beneficiaries

subject to identical and/or substantially identical fiduciary duties by Hohenberger as the

administrator of the AVFD 401K Plan, and Defendant's conduct as alleged violates the rights of

Ring and the Plaintiff Class to have Hohenberger properly exercise his fiduciary duties to the Plan

and its beneficiaries. Plaintiff Ring and all members of the Plaintiff Class appear to have similarly

suffered harm arising from Defendant's violations of law as alleged herein.

58.   **Adequacy:** Plaintiff Ring is an adequate representative of the Plaintiff Class and

because his interests do not conflict with the interests of the members of the Plaintiff Class he

seeks to represent. Plaintiff Ring has retained competent counsel for this class action and Plaintiff

Ring intends to prosecute this action vigorously. Plaintiff Ring and its counsel will fairly and

adequately protect the interests of the members of the Class.

59.   This suit may also be maintained as a class action pursuant to Rule 23 (b) (2) of the

Federal Rules of Civil Procedure because Plaintiff Ring and the Plaintiff Class seek declaratory

and injunctive relief, and all of the above factors of numerosity, common questions of fact and

law, typicality and adequacy are present. Moreover, Defendant has acted on grounds generally

applicable to Plaintiff Ring and the Plaintiff Class as a whole, thereby making declaratory and/or

injunctive relief proper and suitable as remedies.

60.   **Predominance and Superiority.** This suit may also be maintained as a class action

under Rule 23 (b) (2) of the Federal Rules of Civil Procedure because questions of fact and law

common to the Plaintiff Class predominate over the questions affecting only individual members

of the Plaintiff Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member may be disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendant's conduct and practices. Additionally, effective redress for each and every class member against Defendant may be limited or even impossible where serial, duplicitous, or concurrent litigation occurs on these disputes, and as to members of the Plaintiff Class who are still employees of Defendant, their jobs are at risk if they were to become named Plaintiffs. Even if individual class members could afford or justify the prosecution of their separate claims, the court system may not be up to the task. Individualized litigation may lead to incongruous and conflicting judgments against Defendant. To the contrary, a class action procedure involving all class members, Defendant, and the court present fewer management difficulties, and provide the benefit of a single adjudication, economy of scale, and judicial efficiency and fairness. Further, given Defendants' propensity to take actions against employees who ask questions about the 401K, making individuals bring separate class actions as individual plaintiffs places their employment needlessly at risk.

### V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (WRONGFUL TERMINATION OF RING IN VIOLATION OF ERISA)

61.     Plaintiff realleges each allegation set forth in the paragraphs above.

62.     By reason of the foregoing, each Defendant violated the ERISA anti-retaliation provision enacted in 29 U.S.C. § 1140. Ring's request for information about the 401K is a protected activity under ERISA, and his termination was caused in whole or in part as retaliation for asking protected questions.

63.     Ring has been injured by his wrongful termination and as a result should receive compensatory legal damages and equitable remedies, including but not limited to: equitable reinstatement with backpay; mental anguish; loss of enjoyment life; the loss of benefits in the past and in the future; punitive damages; necessary and other compensatory damages or equitable relief that the Court finds just and/or right.

## SECOND CLAIM FOR RELIEF
### (WRONGFUL TERMINATION OF RING IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

64.     Plaintiff realleges each allegation set forth in the paragraphs above.

65.     By reason of the foregoing, Defendant Denton County ESD#1, the successor of AVFD, violated the ADA by terminating him based on the false perception that he was a drug addict and/or based on the false belief that a person on the prescription drug Adderall for ADHD is not qualified to serve as a driver/engineer.

66.     Ring has been injured by his wrongful termination and as a result should receive compensatory legal damages and equitable remedies, including but not limited to: back pay; equitable reinstatement, if feasible, or front pay; mental anguish; loss of enjoyment life; the loss of benefits in the past and in the future; punitive damages; necessary and other compensatory damages or equitable relief that the Court finds just and/or right.

## THIRD, FOURTH, AND FIFTH CLAIMS FOR RELIEF
### (CLASS ACTION REQUESTS FOR BREACH OF FIDUCIARY DUTY, AN ACCOUNTING, AND FOR AN INJUNCTION UNDER ERISA)

67.     Plaintiff realleges each allegation set forth in the paragraphs above.

68.     Pursuant to ERISA at Section 502(a)(2), an individual plan beneficiary may bring an individual claim against the plan administrator for breach of fiduciary duty. See a *LaRue v. DeWolff, Boberg & Associates,* 552 U.S. 248, 256 (2008).

69.     On behalf of himself and other similarly situated persons, Ring claims that Hohenberger as the administrator of the AVFD 401K Plan violated the ERISA rights of Ring and all AVFD employees owed to then by him as a fiduciary of the Plan, by failing to promptly and legally provide SPD documents to plan participants and by failing to make required payments properly and accurately into the 401K plans of participants.

70.     On behalf of himself and others, Ring requests an injunction requiring the District to obey the communication and bookkeeping requirements of ERISA in regard to the AVFD 401K Plan or its successor plan.

71.     On behalf of himself and others, Ring requests an accounting of the AVFD 401K Plan or its successor plan.

72.     On behalf of himself and others, Ring requests the Court find that Hohenberger has breached his fiduciary duties owed to Plan beneficiaries as Plan Administrator and award damages to each class member as determined by the above accounting, and further award punitive damages, and all other compensatory damages or equitable relief that the Court finds just and/or right.

## VI.     JURY DEMAND

73.     Although the Plaintiff seeks an equitable injunction of reinstatement or equitable front pay in the alternative, even cases with remedies sounding in equity, to the extent there are one or more issues of fact or law suitable for a jury, the Plaintiff respectfully requests a jury trial on all such issues.

## VII.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Harold "Trey" Ring seeks relief against Defendants[s], separately or jointly and/or severally, as follows:

A.     That this matter be submitted to a trial by jury on all legal issues and as a bench trial for all issues of equity, and that Judgment be entered against all Defendants:

    a.   finding that that Defendant Denton County ESD#1, as successor to the Argyle Volunteer Fire Department, and that Hohenberger individually, violated Plaintiff's rights under ERISA by terminating him and/or causing his termination, in whole or in part, in retaliation for protected activity of seeking information on behalf of himself and others about the AVFD 401K Plan;

    b.   finding that the Defendant Denton County ESD#1, as successor to the Argyle Volunteer Fire Department, violated Plaintiff's rights under the Americans with Disabilities Act by terminating his employment in retaliation for protected speech of public interest and that Plaintiff's right to free speech outweighed any public interest;

    c.   Awarding Plaintiff compensatory damages and equitable relief, including back pay; equitable reinstatement or equitable front pay; loss benefits in the past and in the future; mental anguish and loss of enjoyment of life; punitive damages, and any and all other legal damages or equitable relief that the Court finds just and right;

    d.   Declaring that Hohenberger violated his fiduciary duty to Plaintiff and the proposed Plaintiff Ordering by failing to timely make required ERISA 401K deposits to Plan beneficiaries;

    e.   Order that an accounting of the as required under ERISA

    f.   Awarding damages for Breach of Fiduciary duty, including in whole or in part based on the above ordered accounting;

**PLAINTIFF'S ORIGINAL INDIVIDUAL AND CLASS ACTION COMPLAINT - 19 of 20**

g.  Award attorney fees;

h.  As to All Claims for Relief, that Plaintiff and/or the proposed Plaintiff Class be

awarded its costs of court, and all such other and further relief in law or equity

as the Court deems to be just and right.

RESPECTFULLY SUBMITTED,

*/s/ Eric N. Roberson*

_____

Eric Roberson
Texas State Bar No. 00792803
Kilgore & Kilgore, PLLC
3109 Carlisle Street
Dallas, TX 75204
214-379-0817 Direct
214.969.9099
214.379.0843 Fax
ENR@KilgoreLaw.com
**Attorney for Plaintiff Harold "Trey" Ring**